SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-09-0342-AP |
| Appellee, | ) | |
| | ) | Maricopa County |
| v. | ) | Superior Court |
| | ) | No. CR2006-114651-001 DT |
| ISIAH PATTERSON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Janet E. Barton, Judge

**AFFIRMED**

_____


THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Division Chief Counsel
          Jeffrey A. Zick, Section Chief Counsel
          Julie A. Done, Assistant Attorney General,
          Capital Litigation Section
Attorneys for State of Arizona

STEPHEN M. JOHNSON                                          Phoenix
     By   Stephen M. Johnson
Attorney for Isiah Patterson

_____


**B R U T I N E L**, Justice

¶1      In 2009, a jury found Isiah Patterson guilty of the first degree murder of Consquelo Barker, and he was sentenced to death.  We have jurisdiction over this automatic appeal under Article 6, Section 5(3) of the Arizona Constitution and A.R.S.

§ 13-4031 (2010).[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶2      At approximately 1:30 a.m. on March 17, 2006, Patterson and Consquelo, his girlfriend, were in his Mesa apartment with their three-year-old son when they began fighting.[2] A downstairs neighbor heard loud crashes and things rolling on the floor. After about ten minutes, the noises stopped. After another ten minutes or so had passed, Consquelo ran from the apartment, naked and screaming for help.

¶3      Patterson chased Consquelo through the outdoor common areas of the apartment complex. He caught her at a sand volleyball pit, sat over her, and stabbed her thirteen times in the face, torso, and arm. The wounds perforated her lungs, diaphragm and spleen, and fractured her arm. Patterson continued stabbing Consquelo until a neighbor, awakened by her screams, yelled for him to stop. Consquelo then stumbled from the volleyball pit, asking for help before collapsing beneath a bush, where she died. Patterson walked back toward his apartment, telling neighbors, "That's what happens when you try to turn a whore into a housewife."

¶4      Patterson was arrested and indicted for Consquelo's

---

[1] This opinion cites the current version of statutes, unless otherwise noted.

[2] "We view the facts in the light most favorable to upholding the verdicts." *State v. Chappell*, 225 Ariz. 229, 233 ¶ 2 n.1, 236 P.3d 1176, 1180 n.1 (2010).

2

murder.  The State sought the death penalty.  Finding Patterson guilty and that the crime was especially cruel, *see* A.R.S. § 13-751(F)(6), the jury determined he should be sentenced to death.

## II. ISSUES ON APPEAL

### A. Voir Dire Questioning

¶5      Patterson contends the trial court restricted his questioning of prospective jurors contrary to *Morgan v. Illinois*, 504 U.S. 719 (1992).  *Morgan* held that due process requires a trial court to allow inquiry into whether a potential juror would automatically impose the death penalty.  *Id*. at 733.[3] Patterson challenges the trial court's refusal to let him question potential jurors about specific aggravating and mitigating factors and its requirement that he mention the mitigation phase of the trial in a hypothetical question he asked jurors.  We review a trial court's ruling on voir dire for an abuse of discretion.  *See State v. Glassel*, 211 Ariz. 33, 45 ¶ 36, 116 P.3d 1193, 1205 (2005).  Patterson is not entitled to relief on these claims.

---

[3]    Although Patterson purports to base this and all his other constitutional claims on both the federal and the Arizona constitutions, his arguments relate solely to the federal constitution.  Because he has not separately argued any state constitutional claims, we consider only his federal claims.  *See State v. Dean*, 206 Ariz. 158, 161 ¶ 8 n.1, 76 P.3d 429, 432 n.1 (2003).

## 1. Specific Aggravator and Mitigator Questions

¶6        Before trial, the State moved to preclude Patterson from asking prospective jurors what factors they would find aggravating or mitigating.  Patterson did not oppose the motion.  Accordingly, we review this issue only for fundamental error.  *See State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005).

¶7        During voir dire, Patterson asked one juror what kind of circumstances she would find mitigating.  The court sustained the State's objection.

¶8        The trial court did not err by granting the State's motion or sustaining its objection.  Defendants are not entitled to "ask potential jurors what types of evidence they will consider to be mitigating."  *Glassel*, 211 Ariz. at 47 ¶ 44, 116 P.3d at 1207; *see also State v. Johnson*, 212 Ariz. 425, 434 ¶ 31, 133 P.3d 735, 744 (2006) (noting that "[e]xtant authority unanimously rejects" the argument that a defendant is entitled to voir dire jury panel about specific mitigating factors).  Similarly, neither the state nor the defense is entitled to ask jurors about specific aggravators.  *See State v. Smith*, 215 Ariz. 221, 231 ¶ 42, 159 P.3d 531, 541 (2007).

¶9        This restriction did not prevent Patterson from sufficiently investigating the beliefs of potential jurors.  Although precluding him from questioning on specific aggravating

and mitigating circumstances, the trial judge allowed Patterson to probe jurors "on their basic beliefs, views, biases and prejudices concerning the death penalty, as well as their general views concerning aggravating and mitigating circumstances that must be considered in determining whether to impose a sentence of life or death." As the trial court suggested, a defendant may legitimately ask what mitigation means to that juror. He could also ask whether the juror can imagine a situation where the totality of a defendant's character, including things he has endured or accomplished, could warrant mercy despite his crimes. *See, e.g.*, *State v. Velazquez*, 216 Ariz. 300, 307 ¶ 20, 166 P.3d 91, 98 (2007); *Glassel*, 211 Ariz. at 46 ¶ 41, 116 P.3d at 1206 (allowing defendant to ask potential jurors what "sufficiently substantial to call for leniency" meant to them). And the record here shows that Patterson did, in fact, ask these types of questions.

### 2. Hypothetical Question

¶10 The trial court also did not abuse its discretion by requiring Patterson to mention mitigation in a hypothetical question he asked. During the first voir dire session, Patterson's counsel asked four jurors whether they thought death is an appropriate sentence if the jury finds a defendant guilty of premeditated first degree murder and also finds at least one aggravator. They agreed that it is. The trial court

5

interjected to clarify that a fair and impartial juror is one who, even after finding guilt and aggravation, would be able to begin the sentencing phase without leaning toward or against the death penalty.

¶11 When questioning concluded, Patterson moved to strike three of the jurors who had been questioned before the trial court's clarification.[4] The State objected, arguing that Patterson's counsel had intentionally "bait[ed]" them into suggesting they would not consider mitigation. It then requested that, prospectively, if counsel used this hypothetical, she be required to mention mitigation. The trial court agreed.

¶12 On appeal, Patterson notes that defendants are entitled to impartial juries, but he has not explained how the trial court erred in its ruling. Error does not result from the court's correctly instructing prospective jurors on the law. *See State v. Kreutzer*, 928 S.W.2d 854, 864-65 (Mo. 1996) (finding no error when court required counsel to conform questions "to the dictates of existing law" and "allowed sufficient latitude in determining whether each venireperson could fairly and impartially follow the court's instructions"); *see also State v. Riggins*, 111 Ariz. 281, 285, 528 P.2d 625, 629

---

[4] None of these jurors was ultimately chosen for the jury panel.

(1974) (noting that, under the Arizona Rules of Criminal Procedure, trial court has discretion to forbid confusing voir dire questions).

¶13     Here, the trial court clarified that the appropriate inquiry was whether a juror could be impartial at the beginning of the penalty phase.  It did not curtail questions tending to reveal a prospective juror's predisposition to vote for death after finding guilt and an aggravator, but before hearing mitigation.  Because the court interfered only minimally with Patterson's voir dire questioning in order to avoid juror confusion and allowed him wide latitude to discover death-biased jurors, it did not abuse its discretion.  *See Kreutzer*, 928 S.W.2d at 864-65.

**B. Juror Strike**

¶14     Patterson next argues that the trial court abused its discretion by striking for cause a juror who worked for the Maricopa County Public Defender's Office and had expressed strong opposition to the death penalty.  We review for an abuse of discretion, giving great deference to the trial court, which was in the best position to personally observe the juror. *Glassel*, 211 Ariz. at 47 ¶ 46, 116 P.3d at 1207.

¶15     Juror Twelve stated in her juror questionnaire that she was an "Initial Services Specialist" for the Maricopa County Public Defender's Office, who "conduct[ed] initial interviews"

7

and "jail visits."  She knew that Patterson's lead attorney had once worked for the Public Defender's Office and also knew two other members of Patterson's defense team.  Juror Twelve further reported that "it would be hard for [her]" to participate in a capital case because she had "worked close to death penalty cases in [her] office," she did not believe in the death penalty, and she has always held anti-death penalty views.  She marked a box stating that her "position against the death penalty [was] so strong that [she] could not vote for the death penalty under any circumstances" and added that she did not believe she has "the right to be part of taking someone's life."

¶16     During voir dire, Juror Twelve initially reiterated these positions, but on further questioning by the State, she responded that she was able to be fair and impartial and that she thought she would be able to serve on this jury.  She further stated that she would be able to sentence someone to death if she felt that it was the appropriate sentence.

¶17     The State moved to strike Juror Twelve, pointing out that in her questionnaire, she had "repeatedly and clearly pointed out her absolute objection" to the death penalty and "indicated she cannot follow the law."  Yet, the State noted, during questioning she provided answers "completely different and contrary" to those in her questionnaire.  Over Patterson's objection, the trial court struck Juror Twelve, explaining:

8

> I have concerns, as I said before, over that juror's veracity. I have the ability to observe her here, to review the question[naire]. This is not a situation where this juror was wishy-washy in her questionnaire as to what she could or could not do, nor is this a situation where she was rehabilitated. This is a situation where this juror, who works for the Public Defender's office and says she has worked on death-penalty cases, totally flip-flopped her answers.

¶18    The trial court did not abuse its discretion. Although a juror may not be excluded merely for voicing objection to the death penalty, *Witherspoon v. Illinois*, 391 U.S. 510, 520 (1968), the trial court is entitled to remove potential jurors whose views and biases would interfere with the performance of their duties, *Glassel*, 211 Ariz. at 47-48 ¶ 47, 116 P.3d at 1207-08. "[E]ven if a juror is sincere in his promises to uphold the law, a judge may still reasonably find a juror's equivocation 'about whether he would take his personal biases in the jury room' sufficient to substantially impair his duties as a juror, allowing a strike for cause." *State v. Ellison*, 213 Ariz. 116, 137 ¶ 89, 140 P.3d 899, 920 (2006) (quoting *Glassel*, 211 Ariz. at 48 ¶¶ 49-50, 116 P.3d at 1208).

## C. Denial of Mistrial

¶19    Patterson maintains that the trial court erred by denying his request for a mistrial based on prosecutorial misconduct. He contends that the prosecutor's unprofessional behavior, combined with the State's failure to timely disclose a

9

PowerPoint presentation, which itself contained a misstatement of law, amounted to misconduct warranting a mistrial. We review the trial court's ruling for an abuse of discretion, *see State v. Lehr*, 227 Ariz. 140, 150 ¶ 43, 254 P.3d 379, 389 (2011), and will not reverse unless misconduct occurred and there is a reasonable likelihood it could have affected the jury's verdict and denied Patterson a fair trial, *see State v. Prince*, 226 Ariz. 516, 537 ¶ 84, 250 P.3d 1145, 1166 (2011).

¶20     Patterson contends that "[d]uring jury selection[,] the defense was constantly pointing out" that the prosecutor had "sighed inappropriately, smirked at the questions proposed by the defense, and constantly called attention to [her]self by head nodding, and other unprofessional conduct." This conduct, if it occurred, would certainly deserve disapprobation even if it did not rise to the level of misconduct. But the record does not support Patterson's contention that the prosecutor's courtroom demeanor and behavior amounted to misconduct.

¶21     Patterson points to a single motion accusing the State of unprofessionalism during voir dire. In denying this motion, the trial court did not confirm that any of the alleged behavior actually occurred.[5] And even if it did, Patterson has not shown

---

[5]     The record does suggest that some jurors might have perceived the prosecutor's behavior as inappropriate at times. On a jury question form, one juror asked the trial court to tell

10

that it amounted to "persistent and pervasive misconduct" that denied him a fair trial. *Prince*, 226 Ariz. at 539 ¶ 92, 250 P.3d at 1168 (considering cumulative effect of prosecutor's actions without first concluding any misconduct had occurred) (internal quotation omitted).

¶22 We next consider Patterson's claim that the State's belated disclosure of a PowerPoint presentation that misstated the law amounted to prosecutorial misconduct. The State first disclosed the presentation on the day of its guilt-phase closing argument. Patterson moved to preclude the presentation. Although displeased with the late disclosure, the trial court denied Patterson's request, while remaining open to specific objections to the presentation's contents. During the State's argument, Patterson objected to a slide explaining the law on second degree murder.

¶23 During a break, Patterson moved for a mistrial based on both the late disclosure and a diagram in one of the State's slides.[6] The trial court denied the motion, but reconsidered

---

the prosecutor to stop rolling her eyes and talking during testimony, describing the conduct as "distracting" and "unprofessional." The juror appears to have concluded that, rather than prejudicing Patterson, the prosecutor's behavior reflected poorly on the State.

[6] Although Patterson recounts his objection to this slide, he makes no argument based on it. And, in any event, we would decline to address any such argument because Patterson has not

Patterson's previous objection to the State's description of second degree murder, noting that the prosecutor had incorrectly stated that to find Patterson guilty of second degree murder, the jury would "have to find [the murder] was the instant result of sudden quarrel or heat of passion." The court instructed the prosecutor to "straighten[] [it] out in front of the jury." Upon resuming its argument, the State cured the misstatement, explaining that the distinction between first and second degree murder is premeditation. Patterson did not object to the State's revised statement of the law.

¶24       We find no abuse of discretion. The choice of a sanction for late disclosure is a matter within the discretion of a trial court, and we will not reverse its ruling absent a showing of prejudice. *See State v. Rienhardt*, 190 Ariz. 579, 586, 951 P.2d 454, 461 (1997). Patterson has not explained how the State's late disclosure prejudiced him, and no prejudice is evident from the record.

¶25       Similarly, the State's misstatement of law in its

---

preserved the slide as part of the record. *See State v. Herrera*, 174 Ariz. 387, 396, 850 P.2d 100, 109 (1993) (declining to address trial court's exclusion of hearsay evidence when defendant did not offer it into evidence and no copy of it made part of the record); *see also State v. Hargrave*, 225 Ariz. 1, 16 ¶ 61, 234 P.3d 569, 584 (2010) (stating that appellate court needs a sufficient record "to allow adequate consideration of the errors assigned") (internal quotation omitted).

argument and on the slide did not require a mistrial. The slide was not admitted into evidence. Although the prosecutor misstated the law, it corrected the misstatement. And the trial court properly defined second degree murder in its jury instructions. These actions cured any error resulting from the prosecutor's initial misstatement. *See Prince*, 226 Ariz. at 538 ¶¶ 89-90, 250 P.3d at 1167 (concluding that jury instructions and prosecutor's correction of his own statements cured misstatements of law).

**D. Denial of Manslaughter Instruction**

¶26      Patterson contends that the trial court abused its discretion by denying his requested jury instruction on the lesser included offense of manslaughter. *See State v. Wall*, 212 Ariz. 1, 3 ¶ 12, 126 P.3d 148, 150 (2006) (reviewing denial of lesser included offense instruction for abuse of discretion). He contends that evidence that he and Consquelo fought in the apartment supported such an instruction. *See* A.R.S. § 13-1103(A)(2) (defining manslaughter as "[c]ommitting second degree murder . . . upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim").

¶27      The trial court correctly rejected Patterson's request for a manslaughter instruction because the evidence did not support one. *See State v. Gomez*, 211 Ariz. 494, 501 ¶ 32, 123 P.3d 1131, 1138 (2005) (finding no error in refusing

manslaughter instruction when defendant presented no evidence of adequate provocation for killing). Testimony reflected that any mutual combat, if it occurred at all, ended at least ten minutes before Consquelo fled the apartment. No reasonable juror could find that the unarmed Consquelo had done anything constituting "adequate provocation" for Patterson to chase her from the apartment, run her down, and stab her to death.

**E. Inclusion of Dangerousness Allegation in Guilt-Phase Verdict Forms and Jury Instructions**

¶28 Patterson argues, and the State concedes, that the trial court erred by instructing the jury at the guilt phase on the State's allegation of dangerousness and by including a finding on this issue in the verdict forms. We conclude that the error was harmless.

¶29 When the State alleges a non-capital sentencing aggravator such as dangerousness, *see* A.R.S. § 13-704, the aggravator should not be mentioned in jury instructions or otherwise during the guilt phase of the trial. Ariz. R. Crim. P. 19.1(b). The non-capital sentencing aggravator should be tried only if a guilty verdict is returned unless the defendant has admitted the allegation. *Id*. Ariz. R. Crim. P. 19.1(b)(2).

¶30 Contrary to Rule 19.1(b)(1), the trial court included the dangerousness allegation in its guilt-phase verdict forms and instructed the jury that a dangerous offense is one that

14

"involved the discharge, use or threatening exhibition of a 'deadly weapon' or 'dangerous instrument' or the 'intentional' or 'knowing' infliction of 'serious physical injury' upon another." It also instructed the jury on the definitions of the terms "deadly weapon," "dangerous instrument," "intent," "knowingly," and "serious physical injury."

¶31  This error was undoubtedly harmless. Patterson never disputed that he killed Consquelo with a butcher knife, which any reasonable jury would find to be a dangerous instrument. As the State correctly noted, the evidence of dangerousness was the same as the evidence of the underlying murder. The jury was instructed not to decide dangerousness unless it first found Patterson guilty of first degree murder. Accordingly, the dangerousness finding was implicit in the guilty verdict and, under these circumstances, failing to bifurcate the trial could not have influenced the verdict.

**F. Exclusion of Defense Witnesses During Aggravation Phase**

¶32  Patterson contends that the trial court abused its discretion by excluding defense mitigation witnesses from the courtroom during the aggravation phase of trial. A trial court must, at the request of a party, "exclude prospective witnesses from the courtroom during opening statements and the testimony of other witnesses." Ariz. R. Crim. P. 9.3(a). This rule applies during the aggravation and penalty phases, and the trial

15

court did not err in granting the State's motion to exclude prospective witnesses under Rule 9.3. *See id.* cmt. ("Section (a) extends the language of the 1956 Arizona Rules of Criminal Procedure . . . to all proceedings.")

**G. Denial of Right to Allocute**

¶33 Patterson claims that the trial court unconstitutionally denied him the opportunity to allocute by not asking him if he wanted to do so before the jury began deliberating. The court discussed allocution with the parties on the record before the penalty phase. A few days later, the trial court asked defense counsel whether Patterson intended to allocute, and counsel responded that she did not know. On the last day of the penalty phase, the court again inquired whether Patterson intended to allocute. Patterson declined through counsel. After the jury had retired, however, the trial judge spoke with Patterson to assure that he was knowingly and willingly foregoing allocution. When the judge asked if he knew he had the right to allocute and whether it was his decision not to, Patterson responded equivocally, ultimately failing to answer.

¶34 Although the better practice would have been to confirm Patterson's waiver of allocution before the jury retired, we see no error on this record. The judge explained allocution and Patterson was advised by his counsel on his

16

decision.  Patterson declined through counsel and, moreover, never claimed — and does not now claim — that he wanted to allocute.

**H. Review of the Death Sentence**

¶35    Because Patterson committed the murder after August 1, 2002, we review the jury's aggravation finding and death sentence for abuse of discretion.  A.R.S. § 13-756(A).

¶36    Patterson does not dispute that his murder of Consquelo was especially cruel.  "A murder is especially cruel under A.R.S. § 13-751(F)(6) when the victim consciously suffered physical pain or mental anguish during at least some portion of the crime and the defendant knew or should have known that the victim would suffer."  *State v. Dixon*, 226 Ariz. 545, 556 ¶ 61, 250 P.3d 1174, 1185 (2011) (internal quotation omitted).

¶37    The record supports a finding that Consquelo suffered both mental anguish and physical pain during the crime.  She remained conscious while Patterson repeatedly stabbed her.  Although mortally wounded, she attempted to escape and seek help.  The jury did not abuse its discretion in finding the (F)(6) "especially cruel" aggravating factor.

¶38    Patterson maintains, however, that the mitigation he presented supports a life sentence.  Patterson presented evidence regarding thirteen mitigating circumstances: (1) his mother's lack of mental stability; (2) mental illness; (3)

17

abandonment by his father at a young age; (4) strong family support from his children and grandchildren; (5) consistent employment despite poor education; (6) ongoing separation from his siblings; (7) a family history of severe mental illness; (8) childhood bed wetting; (9) his father forcing him to leave the family home at age fourteen; (10) lack of education; (11) that he loves and is loved by his family; (12) that he is the father of many children; and (13) remorse. The State presented rebuttal evidence with respect to much of Patterson's mitigation evidence and otherwise argued that it was not substantial.

¶39     Patterson chased down a helpless woman, sat over her, and then brutally murdered her by stabbing her repeatedly. The (F)(6) especially cruel aggravating circumstance was clearly established. On this record, even if we assume that Patterson met his burden of establishing the existence of mitigating circumstances by a preponderance of the evidence, we cannot conclude that the jury abused its discretion in determining that the mitigating circumstances, taken as a whole, were not sufficiently substantial to call for leniency. *See State v. Villalobos*, 225 Ariz. 74, 85 ¶ 51, 235 P.3d 227, 238 (2010). We therefore affirm the death sentence.

### III. CONCLUSION

¶40     For the foregoing reasons, we affirm Patterson's

18

conviction and sentence.[7]

_____
Robert M. Brutinel, Justice


CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Scott Bales, Vice Chief Justice


_____
A. John Pelander, Justice


**APPENDIX**

1. The death penalty is cruel and unusual under any circumstances and violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Harrod*, 200 Ariz. 309, 320, 26 P.3d 492, 503 (2001).

2. The death penalty is imposed arbitrarily and irrationally in Arizona in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona

_____

[7] Patterson raises twenty-two issues to avoid preclusion on federal review. His statements of those issues and the cases he cites as rejecting his contentions are presented verbatim in the Appendix. Some of these contentions, however, do not appear to apply to Patterson; we have included footnotes denoting which are inapplicable.

19

Constitution, as well as Patterson's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, § 4 of the Arizona Constitution. *State v. Beaty*, 158 Ariz. 232, 762 P.2d 519 (1988).

3. Application of the death penalty on the facts of this case would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2 §§ 1, 4, and 15 of the Arizona Constitution.

4. The prosecutor's discretion to seek the death penalty has no standards and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 1, 4, and 15 of the Arizona Constitution. *State v. Sansing*, 200 Ariz. 347, 361, 26 P.3d 1118, 1132 (2001).

5. Aggravating factors under A.R.S. § 13-703(F) are elements of capital murder and must be alleged in an indictment and screened for probable cause. Arizona's failure to require this violates a defendant's right to due process and a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Art. 2, §§ 4 and 24 of the Arizona Constitution. *McKaney v. Foreman*, 209 Ariz. 268, 100 P.3d 18 (2004). Recently, although not mandating aggravators to be screened for probable cause on constitutional grounds, this Court found that defendants had a right under the rules of criminal procedure to have the aggravators screened for probable cause. *See Chronis v. Steinle*, 220 Ariz. 559, 208 P.3d 210 (2009).[8]

6. The absence of proportionality review of the death sentences by Arizona courts denies capital defendants due process of law and equal protection and amounts to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *Harrod*, 200 Ariz. at 320, 26 P.3d at

---

[8] This claim does not appear to apply to Patterson because the record reflects he did receive a *Chronis* hearing.

20

503. Proportionality review serves to identify which cases are "above the norm" of first degree murder thus narrowing the class of defendants who are eligible for the death penalty.

7.  Arizona's capital sentencing scheme is unconstitutional because it does not require that the State prove that the death penalty is appropriate. Failure to require this proof violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Ring*, 200 Ariz. 267, 284, 25 P.3d 1139, 1156 (2001) (*Ring I)*, *rev'd on other grounds by Ring II*.

8.  A.R.S. § 13-703 provides no objective standards to guide the sentencer in weighing the aggravating and mitigating circumstances and therefore violates the Eighth and Fourteenth Amendments of the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Pandeli*, 200 Ariz. 365, 382, 26 P.3d 1136, 1153 (2001).

9.  Arizona's death penalty scheme is unconstitutional because it does not require the sentencer to find beyond a reasonable doubt that the aggravating circumstances outweigh the accumulated mitigating circumstances, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, §§ 4 and 15 of the Arizona Constitution. *State v. Poyson*, 198 Ariz. 70, 83, 7 P.3d 79, 92 (2000).

10. A.R.S. § 13-703 does not sufficiently channel the sentencer's discretion. Aggravating circumstances should narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a harsher penalty. The broad scope of Arizona's aggravating factors encompasses nearly anyone involved in a murder, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *Pandeli*, 200 Ariz. at 382, 26 P.3d at 1153.

21

**11.** Execution by lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Hinchey*, 181 Ariz. 307, 315, 890 P.2d 602, 610 (1994).

**12.** Arizona's *current* protocols and procedures for execution by lethal injection constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *State v. Andriano*, 215 Ariz. 497, 510, 161 P.3d 540, 553 (2007).

**13.** Arizona's death penalty unconstitutionally requires imposition of the death penalty whenever at least one aggravating circumstance and no mitigating circumstances exist, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Aritcle 2, § 15 of the Arizona Constitution. *State v. Miles*, 186 Ariz. 10, 19, 918 P.2d 1028, 1037 (1996).

**14.** A.R.S. § 13-703, (now 13-751, *et. seq.*) unconstitutionally fails to require the cumulative consideration of multiple mitigating factors or require that the jury make specific findings as to each mitigating factor. *State v. Gulbrandson*, 184 Ariz. 46, 69, 906 P.2d 579, 602 (1995).

**15.** Arizona's statutory scheme for considering mitigating evidence is unconstitutional because it limits full consideration for that evidence. *State v. Mata*, 125 Ariz. 233, 242, 609 P.2d 48, 57 (1980).

**16.** Death sentences have been applied arbitrarily and irrationally and in a discriminatory manner against impoverished males whose victims have been Caucasian. *State v. West*, 176 Ariz. 432, 455, 862 P.2d 192, 215 (1993).[9]

---

[9] Although the record suggests that Patterson was not well-to-do at the time of the murder, neither the State nor Patterson presented any evidence that he was actually impoverished. Additionally, his victim was not Caucasian. This claim does not appear to apply to Patterson.

**17.** Subjecting Appellant to a second trial on the issue of aggravation and punishment before a new jury violates the double jeopardy clause of the Fifth Amendment. *State v. Ring*, 204 Ariz. 534, 550, 65 P.3d 915, 931 (2003) (*Ring III*).[10]

**18.** The reasonable doubt jury instruction at the aggravation trial lowered the state's burden of proof and deprived Appellant of his right to a jury trial and due process under the Sixth and Fourteenth Amendments. *State v. Dann*, 205 Ariz. 557, 575-76, 74 P.3d 231, 249-50 (2003) (*Dann I*).

**19.** Arizona's death statute creates an unconstitutional presumption of death and places an unconstitutional burden on Appellant to prove mitigation is "sufficiently substantial to call for leniency." *State v. Glassel*, 211 Ariz. 33, 52, 116 P.3d 1193, 1212 (2005).

**20.** The introduction of victim impact evidence is improper because a defendant does not receive pretrial notice or an opportunity to confront and cross examine the victim witness. *Lynn v. Reinstein*, 205 Ariz. 186, 191, 68 P.3d 412, 417 (2003).

**21.** The trial court improperly omitted penalty phase instructions that the jury could consider mercy or sympathy in evaluating the mitigation evidence and determining whether to sentence the defendant to death. *State v. Carreon*, 210 Ariz. 54, 70-71, 107 P.3d 900, 916-917 (2005).

**22.** The jury instruction requiring the jury to unanimously determine that the mitigating circumstances were "sufficiently substantial to call for leniency" violated the Eighth Amendment. *State v. Ellison*, 213 Ariz. 116, 139, 140 P.3d 899, 922 (2006).

---

[10] This case is not a *Ring* remand and the same jury found guilt, aggravation, and imposed the death sentence. This claim clearly does not apply to Patterson.