NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee,*

*v.*

JONATHAN JESSIE CORRALES,
*Appellant.*

No. 1 CA-CR 14-0456
FILED 9-15-2015

Appeal from the Superior Court in Maricopa County
No. CR2011-156533-001
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Droban & Company, PC, Anthem
By Kerrie M. Droban
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1        Jonathan Jessie Corrales appeals his convictions and sentences for armed robbery, theft, four counts of aggravated assault, attempted first-degree murder, two counts of misconduct with weapons, and discharge of a weapon from a vehicle. On appeal, Corrales argues: 1) the trial court erred in giving the jury a modified *Willits*[1] instruction; 2) the prosecutor committed prosecutorial misconduct during closing argument; and 3) the trial court erred in denying Corrales' motion for directed verdict on the charge of armed robbery. For the following reasons, we affirm.

## FACTS[2] AND PROCEDURAL HISTORY

¶2        On October 28, 2011, Corrales entered a jewelry store and indicated he was interested in purchasing a necklace. Each piece of jewelry Corrales looked at was valued at several thousand dollars and displayed in a locked showcase. At Corrales' request, the owner removed two chain necklaces for Corrales to handle. When Corrales requested to see a third necklace, the owner asked him to return those he already had in his possession. Instead of returning the items, Corrales turned to leave with the necklaces. After finding the store's entry glass door locked, Corrales took out a gun and shot at the glass door so he could exit.

¶3        Corrales fled the scene and was picked up outside the store by a man driving a black Monte Carlo with two red racing stripes on the front hood and an Arizona Cardinal's football license plate. Phoenix police officer Jason Bloom (Officer Bloom) was on patrol that day, when he heard the police dispatcher send out a report of an armed robbery along with the description of the Monte Carlo identified as the getaway car. Shortly thereafter, Officer Bloom observed a black Monte Carlo with red racing

---

[1]        *See State v. Willits*, 96 Ariz. 184 (1964).

[2]        On appeal, we construe the evidence in the light most favorable to sustaining the verdict. *State v. Greene*, 192 Ariz. 431, 436, ¶ 12 (1998).

stripes, and began following the car. Two other officers joined in the pursuit, activating their emergency lights and sirens. The Monte Carlo did not stop, but instead attempted to evade police and "continued to run." During the pursuit, Corrales leaned out of the car and shot at the officers from the Monte Carlo passenger's side window. One of Corrales' shots struck Officer Bloom's patrol vehicle, shattering the windshield and forcing him to leave the pursuit. The other officers continued the pursuit and Corrales fired additional shots.

¶4        Corrales and another individual were later arrested and charged with several felonies arising from the armed robbery and police pursuit. At trial, Officer Bloom identified Corrales as the shooter. Officer Bloom also testified that after his initial suspect identification, he called the case agent Detective W. Bishel to provide a more affirmative identification, but neither Officer Bloom nor Detective Bishel prepared a supplemental report regarding this conversation.

¶5        A jury convicted Corrales of all charges against him. The trial court sentenced him to eighteen years' imprisonment with credit for 961 days' presentence incarceration on Counts one and two. Corrales was also sentence to twenty-eight years' imprisonment on the remaining Counts, with this term to be served consecutive to Counts one and two. Corrales timely appealed, and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21.A.1 and 13-4031 and -4033.A (West 2015).[3]

## DISCUSSION

I.    Modified *Willits* Instruction

¶6        Corrales argues the trial court erred in failing to include certain standard language in its *Willits* instruction. At trial, the court provided the following instruction:

> If you find that the State has failed to preserve evidence whose contents or quality are important to the issues in this case, then you should weigh the explanation, if any given for the loss or unavailability of the evidence. If you find that such explanation is inadequate, then you may draw inference unfavorable to the State.

---

[3]    We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

Corrales claims that the trial court should have also included as part of the instruction the following: "an inference unfavorable to the State which, in and of itself may create reasonable doubt as to the defendant's guilt."

**¶7**        A defendant is entitled to a *Willits* instruction when the State fails to act reasonably in preserving any obviously material, exculpatory evidence, resulting in prejudice to the defendant. *State v. Perez*, 141 Ariz. 459, 464 (1984). Pre-trial disclosures by the State indicated that its witness, Officer Bloom, had not identified anyone when shown a photographic line-up that included a picture of Corrales. As previously stated, Officer Bloom identified Corrales as the shooter at trial. Officer Bloom also testified that he called Detective Bishel to provide a more affirmative identification after his initial identification, but no supplemental report was prepared before trial. Corrales argued that the in-trial identification by Officer Bloom was "trial by ambush."

**¶8**        The trial court determined: 1) no evidence was lost or destroyed, 2) the State did not act in bad faith, and 3) the officers did not violate police policies by failing to supplement Detective Bishel's report. Moreover, Officer Bloom's identification of Corrales was not exculpatory, but rather was inculpatory. Thus, a *Willits* instruction was not necessary using the standard set forth in *Perez*.

**¶9**        However, the trial court did find that the State's failure to disclose information about the testimony of one of its witnesses in advance of trial was sanctionable and determined that providing a modified *Willits* instruction was appropriate. Thus, the court excluded the standard *Willits* language that Corrales argues should have been included.

**¶10**        A trial court's choice of sanction for late disclosure is discretionary. *State v. Patterson*, 230 Ariz. 270, 276, ¶ 24 (2012). We will not reverse absent a showing of prejudice. *Id.* Corrales has not explained how he was prejudiced by the excluded language and in review of the record on appeal, we find none. The trial court's choice of sanction was therefore not an abuse of discretion.

II.        Prosecutorial Misconduct

**¶11**        Corrales asserts the prosecutor's comment in rebuttal closing that "I can guarantee you that if there was something nefarious going on with the State and the witnesses, you would have gotten an instruction regarding that," resulted in a "watering down" of the trial court's modified *Willits* instruction and amounted to prosecutorial misconduct. We disagree.

**¶12**        In determining whether prosecutorial misconduct has occurred, the court considers whether the prosecutor calls attention to matters that should not be considered and the probability that the jury was improperly influenced by the comments. *State v. Newell,* 212 Ariz. 389, 402, ¶ 60 (2006). Prosecutorial misconduct constitutes reversible error when, in the context of all the evidence presented at trial, the misconduct was so "pronounced and persistent" it infected the trial with unfairness so profound any resulting conviction would be a denial of due process. *State v. Morris,* 215 Ariz. 324, 335, ¶ 46 (2007); *State v. Hughes,* 193 Ariz. 72, 79, ¶ 26 (1998).

**¶13**        Corrales provides no explanation or evidence that suggests the prosecutor's statements improperly swayed or misled the jury to a verdict otherwise unsupported by the record. Officer Bloom was not the only eyewitness to identify Corrales. Corrales' DNA was found on the gun used in the commission of the crimes. His hand prints were found in the Monte Carlo. Given the totality of the evidence presented, the conduct in question would not amount to prosecutorial misconduct. *See Newell,* 212 Ariz. at 403, ¶ 67.

III.        Armed Robbery Conviction

**¶14**        Finally, Corrales argues the trial court erred in denying his request for a directed verdict on the charge of armed robbery. *See* Ariz. R. Crim. P. 20. Specifically, he contends there was no evidence that he used force in taking of property from the jewelry store. We review claims of insufficient evidence de novo. *State v. Bible*, 175 Ariz. 549, 595 (1993).

**¶15**        In evaluating the sufficiency of the evidence, "the controlling question is solely whether the record contains 'substantial evidence to warrant a conviction.'" *State v. West*, 226 Ariz. 559, 562, ¶ 14 (2011) (quoting Ariz. R. Crim. P. 20.a). Substantial evidence is "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* at 562, ¶ 16 (internal punctuation and citation omitted). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987).

**¶16**        A person commits robbery if "in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such

person taking or retaining property." A.R.S. § 13–1902.A (West 2015). Armed robbery occurs when a person uses or threatens to use a deadly weapon in the course of committing a robbery. A.R.S. § 13–1904.A.2 (West 2015).

¶17 Corrales argues he did not commit armed robbery by taking the necklaces because he did not draw his gun until after he had possession of the chains. Corrales contends that because he only used his gun to shoot out the store's locked glass door and did not point the weapon at anyone, there was no contemporaneous use of threat or force in the taking of property and as such, he did not commit armed robbery.

¶18 Under Arizona law, robbery is a "continuous offense," which "includes any of the defendant's acts beginning with the initiation and extending through the flight from a robbery." A.R.S § 13–1901.2 (West 2015). Corrales' argument that he only used the gun to "shoot his way out of the store" is sufficient to suggest to a trier of fact that use of the weapon was to facilitate flight from the robbery. Accordingly, we hold that the trial court did not err by denying Corrales' motion for judgment of acquittal on the charge of armed robbery.

## CONCLUSION

¶19 For the foregoing reasons, we affirm Corrales' convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama