NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

CHRISTOPHER ANGEL REDONDO, *Appellant.*

No. 1 CA-CR 19-0298
FILED 9-2-2021

---

Appeal from the Superior Court in Maricopa County
No. CR2010-106178-002
The Honorable David O. Cunanan, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew S. Reilly
*Counsel for Appellee*

KBUnited LLC, Phoenix
By Kerrie M. Nelson
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1 Christopher Angel Redondo appeals his convictions and sentences for first-degree murder, aggravated assault, and drive-by shooting. He argues the trial court erred by denying his motions for mistrial and admitting irrelevant evidence during the trial's penalty phase. Because no reversible error occurred, we affirm.

## BACKGROUND

¶2 Lieutenant E.S. initiated a traffic stop of a utility truck in the Town of Gilbert. Daimen Irizarry was driving the truck, with Redondo as a passenger. When E.S. approached the truck's passenger side, Redondo fatally shot him in the face. Irizarry and Redondo sped off. Nearby officers who heard the gunshot found E.S. on the ground and reported an "officer down."

¶3 Multiple law enforcement officers responded and followed the truck for approximately 60 miles, where they ultimately apprehended Redondo and Irizarry in a small community known as Top of The World. During the high-speed chase, Redondo climbed into the bed of the truck and tossed heavy tools and equipment—including a "full size generator"—into the path of the pursuing officers. Redondo also shot at the officers.

¶4 The State charged Redondo with one count of first-degree murder, four counts of drive-by shooting, and 19 counts of aggravated assault. The State subsequently filed its notice of intent to seek the death penalty.

¶5 Following a 43-day trial, the jury found Redondo guilty of first-degree murder, five counts of aggravated assault, and two counts of drive-by shooting, but acquitted him of the remaining charges. Although the jury subsequently found two aggravating circumstances, thus making Redondo eligible for the death penalty, the jury recommended Redondo be sentenced to life imprisonment. The trial court imposed consecutive sentences: natural life for the first-degree murder conviction followed by

presumptive prison terms for the remaining counts. Redondo timely appealed, and we have jurisdiction under A.R.S. §12-120.21(A)(1).

## DISCUSSION

### I.    Motions for Mistrial

¶6    Redondo challenges the trial court's denial of his motions for mistrial. In those motions, Redondo argued a witness provided improper testimony, and the trial judge and prosecutor engaged in misconduct. We will reverse the court's rulings only for an abuse of discretion that is "palpably improper and clearly injurious." *State v. Murray*, 184 Ariz. 9, 35 (1995) (quotation and citation omitted). The court's discretion in such matters is broad because it "is in the best position to determine whether the evidence will actually affect the outcome of the trial." *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000). "A declaration of a mistrial . . . is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003) (quotation and citation omitted).

#### A.    Testimony

¶7    Redondo first argues he was entitled to a mistrial because a police officer testified Redondo was a "murderer." The record shows otherwise. In response to defense counsel's question regarding previous experience with "shootings where an officer died," the officer responded, "I'm not recalling an incident where an officer was murdered that I was involved in." Thus, although perhaps nonresponsive, the testimony implied at most that E.S. was murdered, not that Redondo was the murderer. And the fact that E.S. was shot and killed was not disputed at trial. No error occurred.

#### B.    Judicial Misconduct

¶8    Redondo next argues the court should have granted his mistrial motions that alleged instances of judicial misconduct.

¶9    The right to a fair trial necessarily includes "the right to have the trial presided over by a judge who is completely impartial and free of bias or prejudice." *State v. Neil*, 102 Ariz. 110, 112 (1967). "Bias and prejudice mean a hostile feeling or spirit of ill will, or undue friendship or favoritism, toward one of the litigants." *State v. Hill*, 174 Ariz. 313, 322 (1993). But "[j]udicial rulings alone do not support a finding of bias or

partiality without a showing of an extrajudicial source of bias or deep-seated favoritism." *See State v. Macias*, 249 Ariz. 335, 342, ¶ 22 (App. 2020). Judges are presumptively impartial, and overcoming that presumption requires proof of actual, not speculative, bias. *Id.*

**¶10**         Redondo first points to the following exchange as defense counsel cross-examined a witness:

> [DEFENSE COUNSEL]:  . . . Let me show you what's been marked as Exhibits 105 through 117. . . .
>
> [PROSECUTOR]:  And I have no objection to the admission of all of those.
>
> THE COURT:  Do you want to move them in, counsel?
>
> [DEFENSE COUNSEL]:  No, judge.  I'm going to ask [the witness] questions first.
>
> THE COURT:  So do you want them moved into evidence?
>
> [DEFENSE COUNSEL]:  I don't know.  I don't know if he can identify them.  He may not be the proper person to ask the question.  Why would I -- that's why I -- I never got to interview him.  This is -- this is my time to find out what he knows.
>
> [DEFENSE COUNSEL]:  Can -- can you look at that set of photos, sir?
>
> THE COURT:  So why would you want him to look at them if you don't want -- whatever.  Go ahead.
>
> [DEFENSE COUNSEL]:  Certainly Judge.  I'll be happy to answer it.  I don't know whether he can identify those photos.  Why would I move in photos that this witness didn't see?
>
> [PROSECUTOR]:  I'm moving them in.
>
> [DEFENSE COUNSEL]:  It doesn't matter if he's moving them in.  He doesn't move them in in the middle of my --
>
> THE COURT:  Well, counsel --
>
> [DEFENSE COUNSEL]:  --  cross-examination.

THE COURT:  -- if you -- he's not moving them in.  He just said he had no objection to them moved into evidence.  And, in essence, he's willing to waive that foundational requirement.  So, do you want them in or you don't want them in?

[DEFENSE COUNSEL]:  Not yet, sir.

THE COURT:  All right.  Go ahead, counsel.

[DEFENSE COUNSEL]:  I'm -- Judge, the Court just looked at the jury and kind of shrugged.  And I don't understand what the issue is.  I truly don't.  I -- I believe that it's detrimental to my client's case what -- what was just conveyed by the Court.

THE COURT:  Well, first of all, the Court conveyed nothing.  I simply said that he's not objecting to them.  So if you want the witness to testify to them, without him having to look at every one and go everyone, he's willing to allow you to do it.  So, I don't know why you wouldn't just do that.

[DEFENSE COUNSEL]:  I'll tell you what.  If -- if that's what the Court wants -- I mean, I do my things my way.  But if the Court is telling me that somehow I'm wrong, then I'll do it the Court's way. . . .   [B]ut the fact [is] that he didn't object.  I didn't move them into evidence.  So why is he -- why is he stating an objection or nonobjection when I didn't move them in.

THE COURT:  Do exactly what you want to do, counsel.

¶11        According to Redondo, the foregoing illustrates the trial court scolded and belittled defense counsel.  When presented with Redondo's request for a mistrial, the court rejected such characterizations of the exchange.  Redondo renewed his motion for mistrial, arguing the court exhibited actual bias by favorably treating the State when it employed a similar trial strategy.  Again, the court denied the motion, rejecting Redondo's characterizations.

¶12        First, we disagree with Redondo's assertion that the trial court treated the State more favorable on the same issue.  Redondo appears to be referring to a prior situation at trial when the court allowed the State to ask a witness to examine exhibits that had not yet been admitted into evidence.  Redondo argues this is exactly what he tried to do in the exchange quoted

above, but contends he received a lecture in front of the jury while the State was allowed to proceed without question. However, when the State had asked a witness to examine unadmitted documents, the State also informed the court it would move the documents into evidence as soon as the witness was finished looking at them. When defense counsel tried to do the same, he told the court he was not yet sure whether he wanted to admit the exhibits, prompting the court to inquire why defense counsel wanted the witness to look at the exhibits in the first place.

¶13　　　　Although the cold record seems to indicate the trial judge exhibited frustration and some impatience with defense counsel, it does not show what led to defense counsel's strident refusal to accept the court's offer to admit the photos when the State indicated it had no objection. Regardless, and even though it would have been better if this exchange would have occurred outside the presence of the jury, Redondo does not come close to meeting his burden of showing actual bias or prejudice on the part of the judge. *See Liteky v. United States,* 510 U.S. 540, 555–56 (1994) ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display."); *State v. Hill*, 174 Ariz. 313, 323 (1993) ("Even the best trial judge can run short on patience and turn from diplomacy to exasperation. While patience is a virtue, trial judges are human, and we recognize the difference between irritation and favoritism."); *State v. Curry*, 187 Ariz. 623, 631 (App. 1996) ("At best, defendant can show only that some antagonism existed between his counsel and the trial judge. This is insufficient to support a recusal motion."). Thus, the trial court did not abuse its discretion by refusing to grant a mistrial.

¶14　　　　Redondo next refers us to defense counsel's questioning of a witness about digital recordings of the police radio transmissions that were broadcast during the traffic stop and subsequent pursuit. The witness testified that one of the discs displayed the following error message when inserted into a computer: "Caution: This voice printed pack-and-go file has either been corrupted or tampered with. Invalid file size." Counsel then questioned the witness about the error message and "tampered" files. The following ensued:

> [DEFENSE COUNSEL]: And what was the reason for the stop, as you understood it, based on your investigation?
>
> [PROSECUTOR]: Objection. Hearsay.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Actually, present sense impression, Your Honor. It's an exception.

[PROSECUTOR]: I'm going to object to counsel's argument.

THE COURT: I'll sustain the objection, counsel. *Didn't you just argue that these are all corrupt and tampered with?*

[DEFENSE COUNSEL]: I'm sorry, Judge. Did I -- did I argue to anyone it was corrupt? I asked him questions. I haven't argued to the jury, nor have I argued to you, nor have I argued to counsel. I simply asked questions.

THE COURT: The objection is sustained, counsel. Next question, please.

[DEFENSE COUNSEL]: Actually, I'm going -- I'm going to move for a mistrial at this point in time because this Court has indicated that somehow I've been arguing --

THE COURT: It's overruled, counsel. Next question, please.

(Emphasis added.)

¶15 Redondo contends the trial court's reference to defense counsel "arguing" the files were "corrupted and tampered with" constituted an improper reprimand of counsel in front of the jury and exhibited the court's bias in favor of the State. As an initial matter, whatever impropriety occurred can, at least partly, be attributed to defense counsel's unwarranted failure to abide by the court's initial ruling sustaining a hearsay objection. And the court previously warned counsel that speaking objections were not allowed. Instead of simply acknowledging the ruling and proceeding accordingly, defense counsel challenged it.

¶16 Furthermore, the court was justifiably concerned with defense counsel's focus on the "tampered" files. As the court noted, defense counsel introduced into evidence a written summary of police radio recordings pertaining to the stop and pursuit. The summary's author had testified it was a "compilation of everybody's radio tapes." The court admitted the summary into evidence, over the State's hearsay objection, on the basis the summary was a true and accurate copy, the witness had listened to the recordings, "and that all was correct." The court reasonably

7

concluded defense counsel's references to the files as "corrupted" or "tampered with" was an improper attempt to establish a factual basis for challenging the accuracy of the radio recordings. We discern no inappropriate reprimand of defense counsel or bias in favor of the State, and a mistrial on that basis was not warranted.

¶17        The final allegation of judicial misconduct relates to the trial court's response, "I agree with that," to the prosecutor's objection during defense counsel's closing argument. Redondo does not argue the court's ruling was substantively incorrect; rather, he contends the phrase "I agree with that" illustrated the court's bias. We disagree. The court's statement "I agree with that" is not so different from merely saying "sustained" that it overcomes the presumption of judicial impartiality. *See Curry*, 187 Ariz. at 631 ("[W]e fail to understand how adverse rulings to which a party assigns no error can nevertheless amount to bias on the part of the judge."). The court properly denied Redondo's motion for mistrial.

### C.        Prosecutorial Misconduct

¶18        Redondo argues he was entitled to a mistrial based on two instances of alleged prosecutorial misconduct during closing arguments. "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (quotation and citation omitted). "We evaluate each instance of alleged misconduct," and also look to the cumulative effect. *Id.* at 335, ¶ 47. When the defendant properly objects at trial, as here, we will reverse only if the defendant can show "(1) misconduct exists and (2) 'a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *State v. Murray*, 250 Ariz. 543, 548, ¶ 13 (2021) (citation omitted).

¶19        Redondo first directs us to the following comment the prosecutor made in his initial closing argument:

> Now the two angels that you see riding in the - - in the truck, those are from Heaven. You know, don't look at what they did. I mean, they're angels. Don't you see that they're angels? I mean, they're at the Top of the World; aren't they? Isn't that where they're leading them to, the Top of the World? Don't look at their conduct. Look at these bad people that are

coming from the bottom. It's almost Biblical the way it was presented.

¶20 Although we agree the statement was hyperbole, it was nonetheless an appropriate response to Redondo's trial evidence that focused on apparent improprieties related to how law enforcement conducted the pursuit and apprehension in this case. Moreover, the statement falls within the wide latitude prosecutors have in presenting their closing arguments. See *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000) ("Excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal . . . ."). Finally, immediately after Redondo objected to the statement the trial court instructed the jury that the attorneys' statements during closing arguments are not evidence or the law. The statement did not rise to the level of prosecutorial misconduct.

¶21 The second instance of purported misconduct occurred when the prosecutor incorrectly stated, as a prerequisite for asserting the shooting was justified based on self-defense, Redondo had to admit he "killed" E.S. *See State v. Carson*, 243 Ariz. 463, 467, ¶ 16 (2018) ("We conclude that if the slightest evidence supports a finding of self-defense, the prosecution must prove its absence, even if the defendant asserts a misidentification defense."). The prosecutor, however, corrected the misstatement of law during his rebuttal argument:

> The State will agree with one issue that was presented by the defendant or that portion of the presentation, and it deals with the justification instruction. It is true that with regards to that instruction, it does not indicate that an individual must admit the act before they avail themselves of the justification instruction.

¶22 Given the prosecutor's correction, in addition to the trial court's repeated admonishment to the jurors that their written instructions contain the applicable law, the incorrect statement of law regarding self-defense was cured. *See State v. Patterson*, 230 Ariz. 270, 276, ¶ 25 (2012) (concluding that jury instructions and the prosecutor's subsequent correction of error cured a misstatement of law). A mistrial was not warranted.

## II. Penalty Phase Evidence

¶23 During the State's rebuttal in the penalty phase, over Redondo's objection the trial court admitted recordings of phone calls Redondo made from jail while awaiting trial. Redondo argues the recorded

conversations were irrelevant.  Redondo also contends the court erred by submitting the recordings to the jury during its deliberations.

**¶24**  "[E]vidence that is inadmissible during the guilt phase may be admissible during the penalty phase if it rebuts the defendant's mitigation and is not unfairly prejudicial."  *State v. Burns*, 237 Ariz. 1, 29, ¶ 130 (2015).  Here, Redondo's mitigation evidence included expert opinions that he suffered from psychosis and other mental illnesses.  In the recorded phone calls, however, Redondo was calm, lucid, and rational.  Based on the mitigation evidence, admission of the recordings was proper to support a rebuttal argument that Redondo was malingering.

**¶25**  Finally, we reject Redondo's argument that the jury was not entitled to access the recordings during deliberations.  This court has repeatedly upheld the right of deliberating jurors to review recordings admitted into evidence.  *See e.g., State v. Lichon*, 163 Ariz. 186, 193 (App. 1989) (videotapes); *State v. Snowden*, 138 Ariz. 402, 404 (App. 1983) (audiotape).

## CONCLUSION

**¶26**  We affirm Redondo's convictions and sentences.

