**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVE ALLEN SMITH,
*Petitioner-Appellant*,

v.

ANTHONY HEDGPETH,
Warden; ATTORNEY
GENERAL FOR THE STATE OF
CALIFORNIA,
*Respondents-Appellees*.

No. 11-16858

D.C. No.
2:07-cv-02237-AK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Alex Kozinski, Chief Circuit Judge, Presiding

Submitted November 6, 2012[*]
San Francisco, California

Filed February 5, 2013

Before: Jerome Farris, Ferdinand F. Fernandez, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of a petition for writ of habeas corpus challenging on double jeopardy grounds a conviction for assault with a deadly weapon, coupled with a great-bodily-injury enhancement, and infliction of corporal injury on a spouse.

The panel held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Texas v. Cobb*, 532 U.S. 162 (2001), and *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003),—whether considered individually or together—did not create "clearly established Federal law" requiring a state court to consider sentencing enhancements as an element of an offense for purposes of the Double Jeopardy Clause.

## COUNSEL

Cliff Gardner and Lawrence A. Gibbs, Berkeley, California, for Petitioner-Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, and Brian G. Smiley and Justain P. Riley, Deputy Attorneys General, Sacramento, California, for Respondents-Appellees.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

BYBEE, Circuit Judge:

In this Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") action we address whether clearly established federal law requires that sentencing enhancements be considered for purposes of the Double Jeopardy Clause of the Fifth Amendment. The district court denied Smith's Petition for Writ of Habeas Corpus, holding that clearly established federal law does not require the consideration of sentencing enhancements when determining if one offense is a lesser-included offense of another under the "same-elements" test. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. *Facts*

Steve Allen Smith brutally beat his wife, Amelia Rogers, with his fists and a telephone in the presence of her daughters, ages 13 and 16, and a neighbor friend. Smith's attack left Rogers with multiple serious injuries, including a fat lip, missing teeth, a broken nose, brain injuries, and a stroke caused by an injury to her carotid artery. Her injuries left Rogers hospitalized, or in the care of a nursing home, for four months. Furthermore, the stroke Rogers suffered left her partially paralyzed, a malady that continued to plague her during Smith's trial.

### B. *Prior Proceedings*

In 2005, a California jury convicted Smith of: (1) infliction of corporal injury on a spouse, with special

findings of great bodily injury involving domestic violence and use of a deadly weapon (phone); (2) assault with a deadly weapon (phone), with a special finding of great bodily injury involving domestic violence; and (3) four other related counts.

Smith appealed his conviction in state court, claiming among other grounds, that his conviction for assault with a deadly weapon—coupled with the great-bodily-injury enhancement—was a lesser-included offense of his conviction for infliction of corporal injury on a spouse—coupled with the deadly weapon enhancement—thus, violating the Double Jeopardy Clause. In 2007, the California Court of Appeal denied Smith's Double Jeopardy claim based on the reasoning in *In re Jose H.*, 92 Cal. Rptr. 2d 228 (Cal. Ct. App. 2000), though noting that the same issue was currently pending before the California Supreme Court in *People v. Sloan*, 64 Cal. Rptr. 3d 137 (Cal. 2007). The California Supreme Court denied Smith's petition for review.

After exhausting his state-law remedies, Smith filed a federal petition for writ of habeas corpus under AEDPA. Smith claimed that *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003), had conclusively rejected the view adopted by the California courts. The district court held, however, that it was not clear whether *Sattazahn* covered Smith's position or was limited to the capital-sentencing context; therefore, the California court's decision could not violate "clearly established Federal law." 28 U.S.C. § 2254(d)(1).

## II. STANDARD OF REVIEW

We review the district court's denial of a petition for writ of habeas corpus de novo. *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc). Under AEDPA, a writ of habeas corpus may be granted to a state prisoner only if the state-court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under AEDPA, we review the last reasoned state-court decision. *Polk v. Sandoval*, 503 F.3d 903, 909 (9th Cir. 2007). In this case, that decision is the California Court of Appeal's April 19, 2007 decision.

Before us, Smith has only argued that the California Court of Appeal's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Clearly established federal law "refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision, however, need not "cit[e] [the Supreme Court's] cases—indeed, [the state court] does not even [need to be] *aware*[] of [the Supreme Court's] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *see also Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

## III. DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects a defendant against both successive punishments and prosecutions for the same criminal offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)). However, only "where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, [does] the double jeopardy bar appl[y]." *Id.* The "same-elements" test was enunciated by the Court in *Blockburger v. United States*: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). Consistent with *Blockburger*, the California courts look to the "statutory elements" to determine whether "the greater offense include[s] all of the statutory elements of the lesser offense," which would make "the latter . . . necessarily included in the former." *People v. Sloan*, 164 P.3d 568, 572 (Cal. 2007) (quoting *People v. Reed*, 137 P.3d 184, 186–87 (Cal. 2006)).

Here, the parties do not contest that if the sentencing enhancements are considered as elements of an offense under the "same-elements" test, then Smith's conviction for assault with a deadly weapon would be a lesser-included offense of his conviction for infliction of corporal injury on a spouse with an enhancement for use of a deadly weapon. As the California Supreme Court has explained, the question is whether the offense of conviction must be considered

together with the sentencing enhancement. *Id.* at 572. It has recognized that although "looking only to the statutory elements" would not run afoul of the "rule against multiple convictions," considering the enhancement as an element would, and it has concluded that "[i]n deciding whether multiple conviction is proper, a court should consider only the statutory elements." *Id.* at 572–73.

We are not called upon to determine whether California's judgment is correct, because its judgment is subject to direct review by the U.S. Supreme Court. Rather, our task is to determine whether California's judgment violates clearly established federal law requiring sentencing enhancements to be considered as elements of an offense for purposes of the Double Jeopardy Clause. In this vein, Smith argues that the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Texas v. Cobb*, 532 U.S. 162 (2001); and particularly *Sattazahn*, clearly establish this principle, entitling him to federal habeas relief. We disagree.

**A.** *Apprendi v. New Jersey*

In *Apprendi*, the Supreme Court considered a New Jersey scheme under which the maximum penalty for second-degree possession of a firearm was 5 to 10 years imprisonment. *Apprendi*, 530 U.S. at 468. A separate statute, however, provided for an extended term of imprisonment for second-degree offenses of 10 to 20 years if the crime was a "hate crime." *Id.* at 468–69. New Jersey authorized its judges to determine, by a preponderance of the evidence, whether a hate crime had been committed. *Id.* The Supreme Court held that New Jersey's scheme violated the Due Process Clause of the Fourteenth Amendment and the Sixth Amendment right to a jury trial. *Id.* at 476–77. The Court stated that "[o]ther

than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. At the same time, it observed that "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing judgment *within the range* prescribed by statute." *Id.* at 481; *see also id.* at 494 ("[T]he effect of New Jersey's sentencing 'enhancement' here is unquestionably to turn a second-degree offense into a first-degree offense.").

In his concurring opinion, Justice Thomas, joined by Justice Scalia, expressed his "view that the Constitution requires a broader rule than the Court adopts." *Id.* at 499 (Thomas, J., concurring). Justice Thomas believed that:

> Sentencing enhancements may be new creatures, but the question that they create for courts is not. Courts have long had to consider which facts are elements in order to determine the sufficiency of an accusation (usually an indictment). The answer that courts have provided regarding the accusation tells us what an element is, and it is then a simple matter to apply that answer to *whatever constitutional right may be at issue in a case* . . . .

*Id.* at 500–01 (emphasis added). For Justice Thomas, the "elements" of "a 'crime' include[] every fact that is by law a basis for imposing or increasing punishment." *Id.* at 501.

Although Justice Thomas's opinion, if it had been a majority opinion and if it extended to Fifth Amendment questions, might have governed California's analysis, *Apprendi* itself did not clearly establish whether sentencing enhancements must be considered as an element of an offense for purposes of the Double Jeopardy Clause. Indeed, that case seems to suggest the opposite. In any event, *Apprendi* alone is insufficient to entitle Smith to federal habeas relief.

## B. *Texas v. Cobb*

In *Texas v. Cobb*, the Court again looked at what constitutes the "elements" of an offense, this time in the context of the Sixth Amendment right to counsel. *Cobb*, 532 U.S. at 167, 172–73. *Cobb* involved a defendant (Cobb) who was represented by counsel on a burglary charge. *Id.* at 165. With his counsel's permission, Cobb was questioned about a mother and infant who had disappeared from the home burglarized by Cobb. *Id.* Cobb argued that his confession to the murders should have been suppressed because it was secured in violation of his right to counsel. *Id.* at 166. The Court granted review to consider "whether the Sixth Amendment right to counsel extends to crimes that are 'factually related' to those that have actually been charged." *Id.* at 167. The Court noted that it had previously considered the definition of an "offense" only in the double jeopardy context. *Id.* at 173 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).

The Court clarified that there is

no constitutional difference between the meaning of the term "offense" in the contexts

of double jeopardy and of the right to counsel. Accordingly, we hold that when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test.

*Id.* at 173. The Court held that because burglary and murder are not the same offense under *Blockburger*, the Sixth Amendment did not bar Cobb's questioning. *Id.* at 174. Nothing in *Cobb* should have alerted the California courts that its analysis of sentencing enhancements clearly violates the Constitution. If anything, *Cobb* would have warded off the California courts from reading too much into decisions not on point, because the Court observed that "[c]onstitutional rights are not defined by inferences from opinions which did not address the question at issue." *Id.* at 169.

## C. *Sattazahn v. Pennsylvania*

*Sattazahn* provides a closer question since in that case, unlike *Apprendi* and *Cobb*, the Court confronted a Double Jeopardy Clause issue. In *Sattazahn*, a capital case, the jury advised the trial court that it was "hopelessly deadlocked at 9-3 for life imprisonment." *Sattazahn*, 537 U.S. at 104. The trial judge discharged the jury as hung and entered a life sentence. *Id.* at 104–05. The trial court was reversed for instructional error, and the case was retried. *Id.* at 105. This time, Sattazahn was found guilty and sentenced to death. *Id.* Sattazahn argued that the Double Jeopardy Clause barred the state from seeking the death penalty at his retrial. *Id.* The Pennsylvania Supreme Court rejected this argument, and the Supreme Court affirmed. *Id.*

The Court stated that "the touchstone for double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal.'" *Id.* at 109.  Here, because the jury had deadlocked, the trial judge was obligated by state law to enter a life sentence.  *Id.* at 104–05.  The Court, however, held that "[t]he entry of a life sentence by the judge was not [an] 'acquittal.'" *Id.* at 109.  In Part III of the opinion, Justice Scalia—joined by Chief Justice Rehnquist and Justice Thomas—added that *Apprendi* had clarified "what constitutes an 'element' of an offense for purposes of the Sixth Amendment's jury-trial guarantee."  *Id.* at 111 (plurality opinion).   Justice Scalia continued: "Just last Term we recognized the import of *Apprendi* in the context of capital-sentencing proceedings" in *Ring v. Arizona*, 536 U.S. 584 (2002).  *Sattazahn*, 537 U.S. at 111 (plurality opinion).  He explained that:

> [F]or purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of "murder" is a distinct, lesser included offense of "murder plus one or more aggravating circumstances": Whereas the former exposes a defendant to a maximum penalty of life imprisonment, the latter increases the maximum permissible sentence to death.

*Id.*  Justice Scalia added: "We can think of no principled reason to distinguish, *in this context*, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an 'offence' for purposes of the Fifth Amendment's Double Jeopardy Clause." *Id.* (emphasis added) (citing *Monge v. California*, 524 U.S. 721, 738 (1998) (Scalia, J., dissenting)).  Smith argues that *Sattazahn* established that enhancements must be

considered part of the crime itself for double jeopardy purposes.

*Sattazahn* does not clearly establish Smith's claim. First, as the district court noted, "the 'context' [Justice] Scalia emphasized was all-important: capital sentencing." The Court has long recognized the unique nature of capital sentencing cases. In *Monge*, for example, the Court refused to extend its interpretation of the Double Jeopardy Clause in *Bullington v. Missouri*, 451 U.S. 430 (1981), a capital case, to "the noncapital sentencing context." *Monge*, 524 U.S. at 731–34; *see also id.* at 731–33 ("[A] critical component of our reasoning in [*Bullington*] was the capital sentencing context. . . . Moreover, we have suggested in earlier cases that *Bullington*'s rationale is confined to the unique circumstances of a capital sentencing proceeding." (internal quotation marks omitted)). The fact that Justice Scalia's statement in *Sattazahn* was expressly limited to the capital context is alone sufficient to take it outside the realm of "clearly established Federal law" for Smith's purposes.

Second, even if we thought that these statements in *Sattazahn* extended to non-capital cases, Justice Scalia's statements in Part III are part of a plurality opinion and are not a binding declaration of the Court. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks omitted). And, the Court has reminded us that, for purposes of AEDPA, only its "holdings, as opposed to [its] dicta" are relevant. *Lockyer*, 538 U.S. at 71. Here, a single rationale explaining the result *did* enjoy

the assent of five Justices—Part II of Justice Scalia's opinion applying the Court's approach in *Bullington* and its progeny to the issue before the Court. *See Sattazahn*, 537 U.S. at 106–10. Part II did not reach the issue of whether the definition of offense for purposes of the jury-trial guarantee of the Sixth Amendment was coextensive with the definition of "offence" in the Double Jeopardy Clause. *See id.* The district court correctly held that "*Sattazahn* offered only dicta on this issue."

Smith argues that Justice Scalia's statement in Part III enjoyed the assent of a majority of the Court because, including the dissenters, "fully seven [J]ustices in *Sattazahn* recognized that enhancing allegations must be considered in determining what constitutes a separate 'offense' under the Double Jeopardy Clause." Although Smith asks us to count the dissenting justices, those justices did not rely upon the rationale presented in Part III of Justice Scalia's opinion. Moreover, the dissent, like Justice Scalia, acknowledged the special context of capital sentencing. *Id.* at 126 n.6 (Ginsburg, J., dissenting) ("This Court has determined, however, that for purposes of the Double Jeopardy Clause, capital sentencing proceedings involving proof of one or more aggravating factors are to be treated as trials of separate *offenses*, not mere sentencing proceedings. Our decisions permitting resentencing after appeal of noncapital convictions thus do not address the question presented in this case."(citations omitted)). Even if we could add the dissent to the plurality, the Court has not *clearly established* the principle Smith argues for outside of the context of capital sentencing.

We hold that *Sattazahn* did not clearly establish whether sentencing enhancements must be considered as an element

of an offense for purposes of the Double Jeopardy Clause. Thus, *Sattazahn* is also insufficient to entitle Smith to federal habeas relief.

## IV.  CONCLUSION

*Apprendi*, *Cobb*, and *Sattazahn*—whether considered individually or together—did not create "clearly established Federal law" requiring a state court to consider sentencing enhancements as an element of an offense for purposes of the Double Jeopardy Clause.  A state court cannot be expected—much less required—to refer to federal law which is *not* clearly established.  Thus, we hold the state court's decision was not "contrary to, or an unreasonable application of, clearly established Federal law."  The Supreme Court has not squarely addressed this issue and fairminded jurists could disagree as to the constitutional principle.  The judgment of the district court is **AFFIRMED**.