ESPINOSA, Judge:
*315 ¶ 1 In this special action, petitioner Jarrad Barnes challenges the respondent judge's order scheduling a jury trial to determine whether his conviction for negligent homicide is punishable as a dangerous offense. He maintains empaneling a new jury to determine a fact necessary to enhance his sentence violates double jeopardy principles. He also contends the state waived the issue pursuant to Rule 19.1, Ariz. R. Crim. P. For the following reasons, we accept jurisdiction but deny relief.
Jurisdiction
¶ 2 While our acceptance of special-action jurisdiction is highly discretionary, Randolph v. Groscost , 195 Ariz. 423, ¶ 6, 989 P.2d 751 (1999), Arizona courts "have held that 'a petition for special action is the appropriate vehicle for a defendant to obtain judicial appellate review of an interlocutory double jeopardy claim.' " State v. Moody , 208 Ariz. 424, ¶ 22, 94 P.3d 1119 (2004), quoting Nalbandian v. Superior Court , 163 Ariz. 126, 130, 786 P.2d 977, 981 (App. 1989). Although the claim may also be raised on appeal after retrial, see State v. Minnitt , 203 Ariz. 431, ¶ 24, 55 P.3d 774 (2002), special-action review is appropriate "[b]ecause the Double Jeopardy Clause guarantees the right to be free from subsequent prosecution" and, if applicable, "the clause is violated by the mere commencement of retrial." Moody , 208 Ariz. 424, ¶ 22, 94 P.3d 1119. Furthermore, the issues raised here are of first impression in Arizona, another important factor in granting special action review. See State ex rel. Romley v. Martin , 203 Ariz. 46, ¶ 4, 49 P.3d 1142 (App. 2002). Accordingly, we accept jurisdiction of Barnes's interlocutory double jeopardy claim.
Factual and Procedural Background
¶ 3 According to the state's recitation of the facts, in May 2016, Barnes was driving at excessive speeds with both marijuana and Clonazepam in his bloodstream when he lost control of his car, hit a center median, and was "launched into oncoming traffic," colliding with victim A.D.'s car head-on. A.D. died as a result of her injuries, and the state indicted Barnes on seven charges, including manslaughter, based on A.D.'s death (Count One), and endangerment, a count "relating to [E.F.], who was driving behind [A.D.]" (Count Three). The indictment apparently did not include dangerous-nature allegations,[1] but, on the day it was returned, the state filed an "Allegation of Dangerous Nature of the Offense(s) Charged," alleging both counts one and three were of a dangerous nature. Anticipating the possibility of jury instructions on lesser-included offenses, this filing also provided, "[T]he State alleges the lesser included offense is of a dangerous nature."[2]
¶ 4 At the close of trial in April 2018, the respondent judge instructed the jury on manslaughter and endangerment, and, consistent with jury instructions proposed by the state, advised the jury, "The State has alleged *316 that the offenses in Count One, Manslaughter[,] and Count Three, Endangerment[,] are of a dangerous nature." The jury was also instructed on negligent homicide, as a lesser-included offense of manslaughter, but not that the state had alleged dangerousness as to that offense. Similarly, although the verdict forms included interrogatories on the issue of dangerousness for the offenses of manslaughter and endangerment, there was no dangerousness interrogatory for negligent homicide.
¶ 5 The jury found Barnes not guilty of manslaughter, but guilty of the lesser-included offense of negligent homicide and some of the other charges alleged. It also found the offense of endangerment "to be of a dangerous nature involving the use and/or discharge and/or threatening exhibition of a deadly weapon or dangerous instrument, to wit a motor vehicle."
¶ 6 After reading the verdicts, the respondent judge asked the jurors, "[A]re these your verdicts and the verdicts of each of you?" to which they collectively responded, "Yes." The respondent then asked whether either side wished to have the jury polled, and the prosecutor responded that the state did not, but asked to approach the bench, where the following discussion ensued:
[PROSECUTOR]: I don't-I didn't hear the Court read out the verdict as far as whether Count One was of a dangerous nature or not.
THE COURT: Because we didn't put dangerous nature on homicide. And I'm not sure you can have dangerous nature negligent homicide. But it is dangerous nature as to the endangerment. So he's going into custody.
[PROSECUTOR]: You can certainly have dangerous nature on negligent homicide.
[DEFENSE COUNSEL]: Yeah, you can.
THE COURT: Well, it didn't go to them on it. So that was the Court's mistake and that's how it went to the jury.
[PROSECUTOR]: Judge, I would ask that we ask them to ask-answer that question for us. That makes a huge difference in not just custody status but sentencing range.
THE COURT: It makes a huge difference. But you think I can send them back now to make that decision?
[PROSECUTOR]: I would ask the Court [to] do that since we alleged dangerous nature as to manslaughter and any ... lessers given.
THE COURT: Okay.
[DEFENSE COUNSEL]: I don't think you can do that. I mean it-the jury's verdict has been rendered. It's not an aggravating factor. It's something they have to consider and it has to be proven beyond a reasonable doubt to the jury. The forms were approved by the parties. We evidently didn't catch that we didn't put it on the lesser.
¶ 7 The respondent judge then reviewed the jury instructions to determine whether the jury had been instructed about dangerousness for the negligent homicide offense, even though the dangerousness interrogatory was missing from the verdict form. She then stated, "We didn't instruct them on it. So I'm not going to send them back. And we can discuss it later as to what we're going to do. Sorry." The respondent then asked if the defense wished to have the jury polled and, after defense counsel said he did not, she discharged the jury.
¶ 8 The following week, the state filed a "Request for Trial on Aggravating Factors," asking the respondent to "empanel a jury in order to make a Dangerousness finding as to the Negligent Homicide conviction." Citing Rule 19.1, Ariz. R. Crim. P., State v. Patterson , 230 Ariz. 270, 283 P.3d 1 (2012), and State v. Larin , 233 Ariz. 202, 310 P.3d 990 (App. 2013), the state argued that "Arizona law supports the Dangerousness finding being made separately, and specifically after, the jury renders its verdict."
¶ 9 In his response to the state's request, Barnes acknowledged that bifurcated consideration of dangerousness was the "usual procedure" set forth in Rule 19.1, but he cited a revision to Rule 19.1(a)(2), effective January 1, 2018, that provides, "With permission of the court, the parties may agree to a different method of proceeding than described in this rule." See Ariz. Sup. Ct. Order R-17-0002 (Aug. 31, 2017). According to Barnes, the *317 state waived "the option of requesting a separate trial to determine sentencing allegations" because "the parties and the Court tried the case with an understanding that the interrogatories for dangerousness ... would be presented to the jury for consideration at the same time as they were to decide guilt."
¶ 10 Barnes maintained this procedure "was with the agreement of the parties, and thus permitted by Rule 19.1 [ (a)(2) ]," the respondent judge "correctly ruled that the State's requested remedy" of presenting the question to the jury after guilty verdicts were returned "was impermissible," and the state "is now collaterally estopped from securing a different procedure after the jury was released." Citing State v. Choate , 151 Ariz. 57, 725 P.2d 764 (App. 1986), he also argued convening "a second trial with a new jury" to determine whether the negligent homicide was a dangerous offense "would constitute a violation of double jeopardy."
¶ 11 After hearing argument, the respondent judge granted the state's request and scheduled a trial "as to the allegation of dangerous nature on the lesser of Negligent Homicide." Barnes filed this petition for special action, and the respondent stayed further proceedings pending our decision.
Discussion
¶ 12 In his petition, Barnes asks us to consider whether the state waived bifurcated consideration of dangerousness, and whether a trial to determine dangerousness of the negligent homicide conviction is barred by double jeopardy. We address these issues in order.
Waiver of Bifurcated Consideration of Dangerousness
¶ 13 We review decisions regarding requested jury instructions and proposed alterations to verdict forms for an abuse of discretion but we review questions of law de novo. Larin , 233 Ariz. 202, ¶ 29, 310 P.3d 990. In Larin , we considered somewhat similar circumstances, albeit before amended Rule 19.1(a)(2), which would appear to permit modification of the procedure for bifurcated consideration of aggravating factors with the court's permission and by agreement of the parties.[3]
¶ 14 In that case, the state argued on cross-appeal "the trial court erred by 'refusing to submit dangerous offense enhancement interrogatories after the jury returned guilty verdicts.' " Larin , 233 Ariz. 202, ¶ 29, 310 P.3d 990. There, as here, allegations of dangerousness had inadvertently been omitted in jury instructions and verdict forms that had been approved by the court. Id. ¶¶ 31-32. The prosecutor in Larin recognized the omission while final instructions were being given, and, rather than seek to revise the verdict forms after the jury had retired to deliberate, she asked the court to instruct the jury on dangerousness in an aggravation phase, in the event Larin was found guilty of the offenses charged. Id. ¶ 31. The court denied the request, noting that language in the Revised Arizona Jury Instructions (RAJIs) suggested a jury should be instructed on dangerousness and provided with an attendant interrogatory on a verdict form, during the guilt phase of trial. Id. ¶ 32.
¶ 15 Consistent with our supreme court's decision in Patterson , 230 Ariz. 270, 283 P.3d 1, we agreed the trial court had erred in denying the state's request, vacated Larin's sentences, and remanded the case for further proceedings. Larin , 233 Ariz. 202, ¶¶ 36, 43, 310 P.3d 990. Noting the clear language of the rule, we held "in a non-capital case, [former] Rule 19.1(b) require[d] that a sentencing *318 aggravator such as dangerousness should not be mentioned in jury instructions or otherwise during the guilt phase of the trial unless it is an element of the offense." Larin , 233 Ariz. 202, ¶¶ 34-36, 310 P.3d 990. In the 2018 amendment to the Rules of Criminal Procedure, the provision pertaining to noncapital sentencing allegations was moved to Rule 19.1(c), with some stylistic changes to the language, including the replacement of "shall" with "must." Compare Rule 19.1(c)with 203 Ariz. LV-LVI. But the prescribed procedure for bifurcated consideration of sentencing allegations remains the same.[4]
¶ 16 Because we are aware of no Arizona case that has considered the new modification provision in Rule 19.1(a)(2), we address an issue of first impression. Alleging an "agreement" to modify the bifurcated procedure called for in Rule 19.1(c), Barnes asserts, without citation to authority, that the state "was collaterally estopped from securing a different procedure after the jury rendered its verdict, recorded in open court, and was released." But unlike Barnes, the state does not characterize its submission of dangerousness during the guilt phase, as to voluntary manslaughter and endangerment, as an agreed-upon deviation from Rule 19.1(c). Instead, it concedes error, albeit harmless, under that rule.[5]
¶ 17 In another context, we have cautioned that contested, "off-the-record conversations" may be "too feeble a reed" to support a finding of waiver. Choate , 151 Ariz. at 58, 725 P.2d at 765. On the limited record available on special-action review, we are unwilling to find waiver or collateral estoppel based on the state's submission of jury instructions and verdict forms on dangerousness with respect to some allegations, and its inadvertent omission of a proposed dangerousness instruction or interrogatory with respect to negligent homicide, particularly when the state had filed a notice of dangerousness specifically for "the lesser included offense." This simply does not support a conclusion, as urged by Barnes, that the state "agreed" all allegations of dangerousness would be tried in the guilt phase or would otherwise be "waived." Just as the parties and court "didn't catch" the omission of a dangerousness interrogatory for negligent homicide, the inclusion of dangerousness at all, during the guilt phase of trial, appears to have simply reflected inattention to Rule 19.1(c), rather than an affirmative intention to deviate from its "clear dictates." Larin , 233 Ariz. 202, ¶ 37, 310 P.3d 990 (noting, and disapproving, provision in 2012 RAJIs suggesting addition of dangerousness interrogatory to "standard 'guilty/not-guilty' verdict form").
¶ 18 For similar reasons, we reject Barnes's attempt to distinguish Larin on the ground that, in that case, the jury had not been instructed on dangerousness as to any offense, 233 Ariz. 202, ¶ 31, 310 P.3d 990, whereas the jury here had been instructed on dangerousness with respect to manslaughter and endangerment during the guilt phase of the trial. According to Barnes, the state seeks "another trial to determine the Allegation of Dangerous Nature that was determined *319 by the first jury (albeit arguably as a result of the State's mistake to not request instructions and verdict forms for Dangerous Nature as to the lesser offense of Negligent Homicide)." But this is little more than an assertion of collateral estoppel in a different guise. The jury in Larin never considered or resolved allegations that the charged offenses were dangerous because it was never asked to do so. Id. ¶¶ 31, 42. Likewise here, the jury never considered or "determined" the allegation that the negligent homicide was a dangerous offense because the issue was not before it. As addressed below, the absence of a finding as to dangerousness is not the equivalent of an acquittal on that allegation. See infra ¶¶28-29; see also Ariz. R. Crim. P. 20(b)(1) ("A defendant may make ... a motion for judgment of ... unproven aggravator or other sentence enhancement on any ... allegation no later than 10 days after any verdict is returned.").
¶ 19 Nor are we willing to conclude the respondent judge's acquiescence in unchallenged jury instructions and verdict forms constituted her "permission" under Rule 19.1(a)(2) to proceed in a manner contrary to the bifurcated trial ordinarily required by Rule 19.1(c), Patterson , and Larin . That procedure serves the important policy of "prevent[ing] the jury from considering inadmissible propensity evidence during the guilt phase of trial," Larin , 233 Ariz. 202, ¶ 34, 310 P.3d 990, and, although a modification may now be allowed under Rule 19.1(a)(2), we will not infer, from the scant record available, that the respondent permitted a deviation from the bifurcation procedure.
Timing of State's Request to Submit Dangerousness to Original Jury
¶ 20 Noting the state's missed opportunities to correct the omission of a dangerousness jury interrogatory, Barnes argues it "did not bring the omission to the Court's attention until after the verdicts were announced and recorded." "At that point," Barnes contends, "it was too late; the Respondent Court was required to discharge the jury under Rule 22.5, Ariz.[ ]R.[ ]Crim.[ ]P." The state contends, as it did below, that it filed the dangerousness allegation for negligent homicide in a timely manner and had informed the court of its inadvertent omission "before the jury was dismissed." It maintains "there was no waiver" because the jury "was still empaneled and available to consider the interrogatory." In other words, the state asserts "there was still time to act" by presenting the issue to the original jury.
¶ 21 In support of this argument, as well as his claim of double jeopardy, Barnes relies on our 1986 decision in Choate , characterizing that decision as a determination that a second jury trial on dangerousness constituted double jeopardy because "the trial court mistakenly failed to have the jury decide the dangerous nature allegation before the verdict was rendered, recorded, and the jury dismissed." But, as the state pointed out below, this court's conclusion in Choate was premised on our determination that dismissal of the original jury "was without the defendant's consent."[6] Choate , 151 Ariz. at 58, 725 P.2d at 765. Indeed, we distinguished Choate's case from State v. Riley , 145 Ariz. 421, 701 P.2d 1229 (App. 1985), stating that, in Riley , we held "double jeopardy did not bar retrial of the existence of a prior conviction," even though the defendant's admission had been "defective[ ]" because the defendant had "consent[ed] to the discharge of the jury without trial" of the issue, and had thereby "waived any double jeopardy claim." Choate , 151 Ariz. at 58, 725 P.2d at 765. In the proceedings below, the state argued our determination in Choate "stands in stark contrast to the facts of this case, where [Barnes] affirmatively requested that the Court dismiss the jury without deciding the issue of dangerousness."
¶ 22 Now, in his petition for special action, Barnes invokes Rule 22.5 to argue his objection to the original jury's consideration of dangerousness-the remedy the state initially requested-was of no moment, because *320 the respondent judge was already "required to discharge the jury under Rule 22.5."[7] That rule provides, in relevant part, "The court must discharge the jury: (1) when its verdict has been recorded under Rule 23." Ariz. R. Crim. P. 22.5(a). But Rule 23, Ariz. R. Crim. P., in turn, provides little guidance on when a verdict is deemed "recorded."[8] And, although Barnes repeatedly asserts the verdict had been "recorded" before the state approached the bench to note the omission of the dangerousness allegation, he cites no authority and no portion of the record to support that proposition.
¶ 23 Our own research suggests that the verdicts had not yet been "recorded"-as contemplated by Rule 22.5 and as Barnes claims-when the state approached the bench and asked for further deliberations by the jury, because the jury had not yet been polled. For example, in State v. Hansen , we observed that Arizona courts have followed federal authorities in holding "that '[a] verdict is final if (1) the deliberations are over, (2) the result is announced in open court, and (3) the jury is polled and no dissent is registered.' " 237 Ariz. 61, ¶ 10, 345 P.3d 116 (App. 2015), quoting State v. Kiper , 181 Ariz. 62, 68, 887 P.2d 592, 598 (App. 1994) (alteration in Hansen ). In addressing the finality of an ambiguous verdict, we concluded Rule 23.3, which provides for polling the jury after the verdict is returned and before the jury is dismissed, "compels the conclusion that a verdict is not final when announced."[9] Id. ¶ 12, quoting United States v. Love , 597 F.2d 81, 84 (6th Cir. 1979). Similarly, here, Rule 23.3 compels the conclusion that a verdict is not "recorded," and the jury is not subject to discharge under Rule 22.5, until after the parties have responded to a court's invitation to poll the jury.
¶ 24 In addition, as the state suggests, our rules clearly contemplate a jury rendering an "[a]ggravation [v]erdict" "[a]fter a guilty verdict and an aggravation phase," Ariz. R. Crim. P. 23.2(e), through the procedure found in Rule 19.1(c). A final guilty verdict on a substantive charge may not be reconsidered during deliberations on aggravating factors. See Kiper , 181 Ariz. at 67-69, 887 P.2d at 597-99 (court properly denied defendant's request to permit juror to reconsider decision when verdicts had been read and "recorded and filed by the clerk" after the jury was polled). But, in light of Rule 23.2(e), as well as Rule 23.3, Rule 22.5 cannot require that a jury be discharged as soon as their verdicts on substantive charges are read in open court.
¶ 25 As addressed above, the record before us does not support a finding that the state agreed, with the respondent judge's permission, to waive the jury's consideration of dangerousness in an aggravation phase. See supra ¶¶16-19. As in Larin , the respondent apparently concluded-at Barnes's urging-that she lacked authority to instruct the original jury to consider, in an aggravation phase, whether the negligent homicide was a dangerous offense. See 233 Ariz. 202, ¶¶ 31-32, 310 P.3d 990. That conclusion was erroneous. See id. ¶ 36.
Whether a Trial to Determine Dangerousness of Negligent Homicide is Barred by Double Jeopardy
¶ 26 Barnes maintains Choate is "binding authority" that warrants relief on his double jeopardy claim. The state raises several arguments in response, contending that (1) under *321 Monge v. California , 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998), "there is no double jeopardy bar against a retrial" of a non-capital sentencing allegation; (2) pursuant to State v. Ring , 204 Ariz. 534, 65 P.3d 915 (2003), double jeopardy principles would not apply because Barnes was not "impliedly or actually acquitted on the merits"; and (3) Barnes waived any double jeopardy claim because he "both consented to the discharge of the jury, and affirmatively argued against having the jury stay to deliberate the issue of dangerousness."
¶ 27 With respect to the state's first argument, the United States Supreme Court "has not squarely addressed" whether a state court must "consider sentencing enhancements as an element of an offense for purposes of the Double Jeopardy Clause," and "fairminded jurists could disagree as to the constitutional principle." Smith v. Hedgpeth , 706 F.3d 1099, 1106 (9th Cir. 2013). We need not resolve that issue here.
¶ 28 Secondly, we agree with the state that the prohibition against double jeopardy does not bar retrial because the record does not suggest Barnes was "acquitted" of the allegation of dangerousness in committing the negligent homicide. In Evans v. Michigan , the Supreme Court concluded a defendant's midtrial acquittal barred retrial under double jeopardy principles, even though the acquittal was based on the trial court's "clear misunderstanding of what facts the State needed to prove" to sustain a conviction for arson.[10] 568 U.S. 313, 316, 320, 133 S.Ct. 1069, 185 L.Ed.2d 124 (2013). The Court distinguished "substantive rulings" of acquittal that preclude retrial and that "stand apart from procedural rulings that may also terminate a case midtrial, which we generally refer to as dismissals or mistrials." Id. at 319, 133 S.Ct. 1069. It explained it had "defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense," including " 'a ruling by the court that the evidence is insufficient to convict,' a 'factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability,' and any other 'rulin[g] which relate[s] to the ultimate question of guilt or innocence.' " Id. at 318-19, 133 S.Ct. 1069, quoting United States v. Scott , 437 U.S. 82, 91, 98 & n.11, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (alterations in Evans ). In concluding Evans's retrial was barred because of an acquittal, the Court stated, "[W]e know the trial court acquitted Evans ... because it acted on its view that the prosecution had failed to prove its case." Id. at 325, 133 S.Ct. 1069. In contrast, the Court found double jeopardy was not implicated in Scott , concluding "the dismissal of an indictment for preindictment delay" considered in that case "represents a legal judgment that a defendant, although criminally culpable, may not be punished because of a supposed constitutional violation." Scott , 437 U.S. at 95, 98, 98 S.Ct. 2187.
¶ 29 Here, the jury found endangerment to be a dangerous offense, and the respondent judge's dismissal of the jury in no way reflected a finding that the evidence was insufficient to support the same determination with respect to negligent homicide. Instead, consistent with Barnes's objection, the respondent denied the state's request for further deliberations on the issue because it had not been included in instructions or verdict forms for the guilt phase of the trial. This is an example of a "[p]rocedural dismissal[ ]"-one that is " 'unrelated to factual guilt or innocence' " and, accordingly, does not implicate double jeopardy. Evans , 568 U.S. at 319-20, 133 S.Ct. 1069, quoting Scott , 437 U.S. at 98-99, 98 S.Ct. 2187.[11]
*322 ¶ 30 Finally, we agree with the state that Barnes's consent to the discharge of the jury, and his affirmative objection to having the original jury deliberate further on the dangerousness issue, precludes his double jeopardy claim. Cf. Scott , 437 U.S. at 98-99, 98 S.Ct. 2187 (finding "no injury cognizable under the Double Jeopardy Clause" when defendant "deliberately choos[es] to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused"); Riley , 145 Ariz. at 421-22, 701 P.2d at 1229-30 (following appellate court's determination that trial court had erred by accepting defendant's admission of prior conviction, protection against double jeopardy not violated by jury trial of prior conviction allegation at resentencing because "defendant consent[ed] to the discharge of the [original] jury").
¶ 31 Barnes is correct that in Choate , we found the trial court's dismissal of the jury without the defendant's consent was "analogous to a mistrial without manifest necessity." 151 Ariz. at 58, 725 P.2d at 765. Under those specific circumstances, we concluded, "The failure of a trial judge, presumably always by mistake or inadvertence, to submit any charge after jeopardy has attached bars retrial." Id. ; see also Oregon v. Kennedy , 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (when trial terminated over defendant's objection, manifest necessity standard is "the classical test for lifting the double jeopardy bar to a second trial").
¶ 32 But where "the defendant himself has elected to terminate the proceedings against him, ... the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause." Kennedy , 456 U.S. at 672, 102 S.Ct. 2083. Accordingly, "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Id. at 676, 102 S.Ct. 2083. Barnes has not alleged such an intent, and this record does not support it.
Authority to Empanel a New Jury
¶ 33 Barnes also relies on State ex rel. Neely v. Sherrill (Segelson) , 168 Ariz. 469, 815 P.2d 396 (1991), and State v. Johnson , 183 Ariz. 358, 903 P.2d 1116 (App. 1995), to argue empaneling a new jury is impermissible under Arizona law because "[i]n the present case, the state bears more than a share of the blame for the claimed necessity for a second trial." In Segelson and Gandara , companion cases consolidated for special-action review on petitions from the state, defendants had absconded either before or during trial. Segelson , 168 Ariz. at 470-71, 815 P.2d at 397-98. In both cases, the state had sought and received permission to try the allegation of prior convictions to a new jury once the respective defendants were apprehended, and the original juries were then dismissed. Id. But after Segelson was apprehended, "the court reversed its ruling and refused to allow the State to prove the allegation of prior convictions to a second jury." Id. at 471, 815 P.2d at 398. In Gandara , a second jury was empaneled and found the defendant had a prior conviction, but the trial court vacated the verdict and dismissed the allegation. Id. In these companion cases, our supreme court considered whether and in what circumstances "the allegation of a prior conviction may be had before a different jury than the one which returned the verdict" on the substantive offense. Id. at 472, 815 P.2d at 399, quoting State v. Crumley , 128 Ariz. 302, 306, 625 P.2d 891, 895 (1981).
¶ 34 The court in Segelson observed that, although Rule 19.1 and the sentence-enhancement statute "suggest that the same jury should hear both issues, neither the rule nor the statute requires this procedure." Id. The court distinguished the circumstances in Crumley , in which it had concluded a discharged jury could not be reconvened to consider previously overlooked allegations of prior convictions. Id. ; see also Crumley , 128 Ariz. at 306, 625 P.2d at 895 (limiting decision to "narrow factual situation" presented and concluding that "[o]nce discharged, ... this jury could not be properly recalled to further decide an issue of this case"); State v. Corrales , 26 Ariz. App. 344, 345, 548 P.2d 437 (1976) (second jury precluded from determining *323 allegation of prior convictions when state had "offered no proof" on issue at first trial).
¶ 35 But the court also recognized that "precedent exists for allowing a second jury to try a prior conviction allegation" in some circumstances. Segelson , 168 Ariz. at 472, 815 P.2d at 399. The court cited State v. Johnson , 155 Ariz. 23, 26-27, 745 P.2d 81, 84-85 (1987), in which the defendant had urged a mistrial and dismissal of a jury that had failed to reach a verdict on prior convictions, and Riley , 145 Ariz. at 421-22, 701 P.2d at 1229-30, in which the defendant had previously consented to the original jury's discharge by entering an admission. Segelson , 168 Ariz. at 472, 815 P.2d at 399. Comparing all of these cases, the court in Segelson concluded, "[T]he State's responsibility for necessitating the second jury" is a "common element" that "distinguishes those cases in which a second jury is allowed from those in which it is prohibited." Id. Thus, "[i]f the State is not at fault in creating the need for the new jury," no statute or rule "prohibit[s] the use of a second jury to try the prior conviction allegation." Id. at 472-73, 815 P.2d at 399-400. The court found the state was "blameless" when "[i]t sought to prove the priors to a second jury because of the defendants' unlawful flight"; it also found no deprivation of the right to a single jury "when the defendant has created or contributed to the situation requiring the use of two juries." Id. at 473, 815 P.2d at 400.
¶ 36 In this court's 1995 decision in Johnson , also cited by Barnes, we modified the defendant's sentence because the trial court, rather than the jury, found he had committed his offense while on release and enhanced his sentence on that basis. 183 Ariz. at 359-60, 903 P.2d at 1117-18 ; see also 1994 Ariz. Sess. Laws, ch. 236, § 1 (release status to be determined by "trier of fact"); State v. Large , 234 Ariz. 274, ¶¶ 12, 16, 321 P.3d 439 (App. 2014) (defendant entitled to jury determination of release status for purpose of sentence enhancement). Relying on Segelson , we declined to remand the case for a jury determination of the issue, noting "the state made no effort to prove defendant's release status and did not object when the trial jury was discharged." Johnson , 183 Ariz. at 360, 903 P.2d at 1118. We stated, "[ Segelson ] teaches that such an exception [to a single jury] is permitted only when the state is not at fault in creating the need for the new jury," adding that a second jury has been precluded "[w]here the state bore a share of the blame." Id. We found that, unlike the state in the Segelson cases, the state in Johnson had not been "blameless" for the jury's discharge, and we therefore concluded it was "precluded from another chance to prove Defendant's status." Id.
¶ 37 As an initial matter, although we do not question the result in Johnson , some of our language in that decision may sweep more broadly than is warranted by Segelson . In addressing whether a second jury may be empaneled after the original jury is dismissed, Segelson requires courts to consider "the State's responsibility for necessitating the second jury." 168 Ariz. at 472, 815 P.2d at 399. Indeed, in both Segelson and Gandara , the state had acted before the juries were dismissed, consenting to their dismissals only after receiving assurances from the trial court that a later trial of sentencing factors-before a new jury-would be permitted. Id. at 470-71, 815 P.2d at 397-98. Although the court found the state "blameless," and "not at fault" "in creating the need for the new jury," id. at 472-73, 815 P.2d at 399-400, it appears the court was simply applying the standard it announced to the specific facts of those cases, not necessarily setting the bar for all future disputes.
¶ 38 Thus, we disagree with any suggestion in Johnson that empaneling a second jury is precluded if the state bore any "share of the blame" for a premature dismissal of the original jury, or that a second jury is prohibited unless the state was absolutely "blameless" for that dismissal. 183 Ariz. at 360, 903 P.2d at 1118. The Segelson court considered the defendant's responsibility as well as the state's, suggesting he cannot have been deprived of a right to a single tribunal for the guilt and aggravation phases of trial when he "created or contributed to the situation requiring the use of two juries" by absconding before or during trial. 168 Ariz. at 473, 815 P.2d at 400. Although the state's responsibility for necessitating a new jury must be taken *324 into account, see id. at 472-73, 815 P.2d at 399-400, we will not consider the state's conduct in a vacuum.
¶ 39 Moreover, although Barnes emphasizes the state's failure to recognize the omissions of dangerousness from the negligent homicide instructions and verdict forms, we conclude this misses the point of the relevant inquiry. It is the dismissal of the original jury that necessitates the need to empanel a second one-not the state's failure to submit all dangerousness allegations during the guilt phase, as Barnes maintains, or its submission of any sentencing factors before verdicts on the substantive offenses were announced, as the state now contends. The state did not ask that the jury be dismissed and, as already addressed, the jury was not subject to mandatory dismissal, as Barnes argues, when the state asked the respondent judge to "send them back" to consider, on the existing record, whether negligent homicide was a dangerous offense. See supra ¶¶23-24; cf. Corrales , 26 Ariz. App. at 345, 548 P.2d 437 (considering, as relevant to availability of second jury, that state presented no evidence to support sentencing factor in first trial). Barnes objected to that request and, without question, he consented to dismissal of the jury, unlike the defendant in Choate . See Choate , 151 Ariz. at 58, 725 P.2d at 765. Under these circumstances, notwithstanding the state's lapses as to jury instructions and verdict forms, we do not find the state "responsib[le] for necessitating the second jury." Segelson , 168 Ariz. at 472, 815 P.2d at 399.
Disposition
¶ 40 For all the foregoing reasons, special-action jurisdiction is accepted and relief is denied.

A copy of the indictment was not included in the limited record provided for this special action, but this point is not in dispute.

As already noted, the record provided by the parties is limited, containing only the state's post-trial "Request for Trial on Aggravating Factors," Barnes's response to that request, the state's reply, and the respondent judge's order granting the request, which is the subject of this special action. We are restricted to the documents contained in Barnes's appendix to his petition and we assume their accuracy. We note, however, that the parties do not dispute the facts, but disagree about their legal significance with respect to the issue raised.

Rule 19.1(a) is now titled "Generally," and Rule 19.1(a)(2) provides, "Modification . With permission of the court, the parties may agree to a different method of proceeding than described in this rule." For the purpose of this decision, we assume, without deciding, that the rule's reference to "method of proceeding" encompasses the bifurcated procedure identified in Rule 19.1(c). The only modification authorized in the previous version of Rule 19.1 was limited to the "Order of Proceedings" then identified in Rule 19.1(a). See Ariz. Sup. Ct. Order Promulgating "The 1973 Rules of Criminal Procedure" (May 3, 1973). Thus, the previous rule did not authorize modification of the provisions in Rule 19.1(c). We need not decide now whether our supreme court intended a substantive change to Rule 19.1 or merely a stylistic one. See Ariz. R. Crim. P. prefatory cmt. to 2018 amends. (noting amendments include both stylistic and substantive changes).

Rule 19.1(c) now provides as follows:
(c) Proceedings if the Defendant Is Charged with Prior Convictions or Noncapital Sentencing Allegations.
(1) During Determination of Guilt or Innocence. If a prior conviction or noncapital sentencing allegation must be found following a guilty verdict, the trial must proceed initially as though there were no prior conviction or sentencing allegations, unless the conviction or sentencing allegation is an element of the charged crime.
(A) When the court reads the indictment, information or complaint, it must omit all references to prior conviction or sentencing allegations.
(B) During trial, the court must not instruct, refer to, or admit evidence concerning a prior conviction or noncapital sentencing allegation, except as permitted by the Arizona Rules of Evidence.
(2) After a Guilty Verdict. If the jury renders a guilty verdict:
(A) the defendant may admit any noncapital sentencing allegation;
(B) the State must prove to the jury any noncapital sentencing allegation not admitted by the defendant, but it need not do so for any aggravator that is already an element of the offense; and
(C) the court decides the existence of any prior conviction allegation.

Whether any error in submitting the allegations of dangerousness during the guilt phase was harmless is an issue that is not before us.

Although we expressed concern in Choate that "[t]he jury ... was dismissed without reaching a verdict" on dangerousness "after it had resolved other charges," 151 Ariz. at 58, 725 P.2d at 765, we did not refer to the verdict having been "recorded" and would have had no reason to do so. See id.

Barnes maintains that, although he did not cite Rule 22.5 on the day the jury returned its guilty verdict, "that was the central thrust of [his] objection."

Rule 23.1 provides, as to the "Form of Verdict," that "[t]he jury's verdict must be in writing, signed by the foreperson, and returned to the judge in open court." Rule 23.2 only identifies "Types of Verdicts" and does not address procedures for recording them. And Rule 23.3 provides for "Polling the Jury," to occur "[a]fter the jury returns a verdict and before the court dismisses the jury ..., at the request of any party or on the court's own initiative." "If the jurors' responses to the poll do not support the verdict, the court may direct them to deliberate further or the court may dismiss the jury." Id. Nothing in Rule 23 refers to a verdict being "recorded."

When Hansen was decided, this provision was found in Rule 23.4. See Hansen , 237 Ariz. 61, ¶ 12, 345 P.3d 116 ; 207 Ariz. XLIV. It was renumbered, with minor stylistic changes, effective January 1, 2018. See Ariz. Sup. Ct. Order R-17-0002.

Persuaded by applicable, but erroneous, Michigan Criminal Jury Instructions, the trial court had concluded the state was required to prove, as an element of the offense, that the burned property was not a dwelling house, notwithstanding Michigan law holding the offense of burning "other" real property was a lesser-included offense of burning a dwelling house and "disproving the greater offense is not required." Evans , 568 U.S. at 316-17, 133 S.Ct. 1069.

Although an acquittal is a "merits-related ruling [that] concludes proceedings absolutely," "no expectation of finality attaches to a properly granted mistrial" on a procedural ground. Evans , 568 U.S. at 319-20, 133 S.Ct. 1069. Here, in denying the state's request to have the original jury deliberate on dangerousness before it was discharged, the respondent judge suggested "later" discussions "as to what we're going to do," belying any expectation of finality.